

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1111-08

**WESLEY CHARLES JOSEPH, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## BEXAR COUNTY

MEYERS, J., delivered the opinion of the Court in which PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined, and in which KELLER, P.J., joined except as to note 7, and in Parts I, II, and III of which WOMACK, J., joined except as to note 7 and Sections A and B. KELLER, P.J., filed a concurring opinion. COCHRAN, J., filed a concurring opinion in which PRICE, JOHNSON, and HOLCOMB, JJ., joined.

## O P I N I O N

Appellant, Wesley Charles Joseph, was convicted of murder and sentenced to twenty-five years' confinement. A key piece of evidence was a recorded statement produced as a result of Appellant's interview with police. The trial court denied Appellant's motion to suppress evidence, finding that Appellant had waived his rights

prior to and during the statement. Appellant appealed and the court of appeals affirmed. We granted review to consider whether Appellant knowingly, intelligently, and voluntarily waived his rights under Article 38.22 of the Code of Criminal Procedure and *Miranda v. Arizona*. We will affirm.

## I.      Facts

On December 6, 2004, Appellant and his friend, Juan Martinez, went to the San Antonio Metropolitan Ministries (SAMM) homeless shelter to confront Javier Gonzalez-Diaz (A.K.A. "Bolillo"). Martinez's wife, Vivian, who was also Appellant's girlfriend, said she had been sexually assaulted by Bolillo. A witness to the incident testified that he saw Appellant punching Bolillo in the stomach and that Appellant put something under his clothing as he walked away. Afterwards, Bolillo lifted up his shirt and looked toward the witness for help.

Appellant and Martinez were arrested and taken to the police station where they were interviewed separately. Detective Sean Walsh interviewed Appellant for approximately six hours. At the start of the interview, Walsh read a warning card to Appellant and upon Walsh's request, Appellant signed his name in the margin. The warning card stated:

> WARNING TO ARRESTEE OR SUSPECT
> Before you are asked any questions, it is my duty as a police officer to advise you of your rights and to warn you of the consequences of waiving these rights.
> 1. You have the right to remain silent.
> 2. You do not have to make any statement[,] oral or written, to anyone.

3. Any statement that you make will be used in evidence against you in a court of law, or at your trial.
4. You have a right to have a lawyer present to advise you before and during any questioning by police officers or attorneys representing the state.
5. You may have your own lawyer present, or if you are unable to employ a lawyer, the court will appoint a lawyer for you free of charge, now, or at any other time.
6. If you decide to talk with anyone, you can, and you can stop talking to them at any time you want.
7. The above rights are continuing rights which can be urged by you at any stage of the proceedings.
DO YOU UNDERSTAND THESE RIGHTS?
SAPD Form 66-E (Jul 99)
[Signed] SW [Detective Sean Walsh] [Badge number] 12-06-04
[Signed] WCJ Wesley C. Joseph, Jr. 2:05 pm 12-06-04

At trial, Appellant sought to suppress the DVD recording of his interview. The court held a *Jackson v. Denno* hearing to determine whether Appellant's statement to Detective Walsh was voluntary and thus admissible. *See Jackson v. Denno*, 378 U.S. 368 (1964). Pursuant to Article 38.22, the trial judge entered findings of fact and conclusions of law regarding the voluntariness of the statement. CODE CRIM. PROC. ANN. art. 38.22, § 6. The trial court found that Appellant received notification of his rights "prior to the statement but during the recording" and that Appellant knowingly, intelligently, and voluntarily waived those rights. Because the statement was made under voluntary conditions, the trial court concluded that Appellant's statement was admissible as a matter of law.[1]

---

[1]As noted by the trial court's findings of fact, the recorded statement was shortened because there were redactions made for defense counsel and "dead time" was removed. "The DVD was altered by agreement of all the parties and in accordance with the Texas Rules of Evidence."

During the trial, the State played clips of the interview, accompanied by live testimony from Detective Walsh. The State asked Walsh to repeat or confirm some of Appellant's comments from the DVD, including that he "wished he hadn't put the knives in his backpack," that "he didn't want to die in the penitentiary," and that "he wasn't going to hit the wrong dude." Walsh also relayed that Appellant had vaguely referred to a "stab-by" at one point during the interview. The jury found Appellant guilty of murder and assessed punishment at twenty-five years' confinement.

Appellant appealed to the Thirteenth Court of Appeals with four points of error, one of which stated: The trial court erred in denying the motion to suppress Appellant's statement because he did not make a knowing, intelligent, and voluntary waiver of his rights under Article 38.22 of the Code of Criminal Procedure and *Miranda v. Arizona*.[2] CODE CRIM. PROC. ANN. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436 (1966). The court of appeals overruled all of Appellant's four issues and affirmed the judgment of the trial court. *Joseph v. State*, No. 13-06-00561-CR, 2008 Tex. App. LEXIS 5133 (Tex.

---

[2]Appellant's four points of error to the court of appeals were as follows: (1) The trial court erred in denying the motion to suppress because Appellant was arrested without a warrant, probable cause, or other lawful authority, in violation of the Fourth Amendment; (2) The trial court erred in denying the motion to suppress because Appellant did not make a knowing, intelligent, and voluntary waiver of his rights under Article 38.22 of the Code of Criminal Procedure and *Miranda v. Arizona*; (3) The trial court erred in admitting the entirety of Appellant's lengthy and prejudicial interview when that was unnecessary to complete the jury's understanding of what had happened during the interview; (4) The trial court caused Appellant egregious harm when it directed the jury to assess a general verdict without requiring a unanimous verdict on a specific offense, contrary to Article V, Section 13 of the Texas Constitution.

App.–Corpus Christi July 10, 2008, pet. granted) (mem. op., not designated for publication). We granted Appellant's petition to this Court on the following ground for review: The court of appeals erred in affirming the trial court's denial of the motion to suppress Appellant's statement because Appellant did not knowingly, intelligently, and voluntarily waive his rights under Article 38.22 and *Miranda*.[3]

## II. Article 38.22: warning and waiver

Article 38.22 of the Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. CODE CRIM. PROC. ANN. art. 38.22. Among its requirements, it provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and

---

[3]Appellant filed a supplemental brief asking that we hold this case in abeyance until the U.S. Supreme Court rules in *Berghuis v. Thompkins*, 547 F.3d 572 (6th Cir. 2008), *cert. granted*, 78 U.S.L.W. 3169 (U.S. Sept. 30, 2009) (No. 08-1470).

Of the two questions presented in that case, one relates to Appellant's issue: "Whether the Sixth Circuit expanded the *Miranda* rule to prevent an officer from attempting to non-coercively persuade a defendant to cooperate where the officer informed the defendant of his rights, the defendant acknowledged that he understood them, and the defendant did not invoke them but did not waive them." *See* http://origin.www.supremecourtus.gov/qp/08-01470qp.pdf (italics added). For two reasons, we conclude that we need not await the *Berghuis* decision. First, the issue to be resolved by the U.S. Supreme Court addresses the absence of waiver, and there *is* evidence of a waiver in Appellant's case. Second, the facts in *Berghuis* paint a picture of a very different interrogation than that experienced by Appellant. Unlike Appellant, Thompkins refused to sign the warning card acknowledging that the officers had read him his *Miranda* rights. *Berghuis*, 547 F.3d at 576. Furthermore, for at least two hours and forty-five minutes during the interrogation, Thompkins "'consistently exercised his right to remain substantively silent.'" *Id.* Such conduct is so different from Appellant's that a significantly different waiver analysis would be expected.

voluntarily waived those rights. CODE CRIM. PROC. ANN. art. 38.22, § 3. The warning must inform a defendant of the following rights:

> (1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2) any statement he makes may be used as evidence against him in court;
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> (5) he has the right to terminate the interview at any time[.]

CODE CRIM. PROC. ANN. art. 38.22, § 2. The statute contains two distinct elements pertaining to a statement's admissibility: the defendant's receipt of the prescribed warning and his waiver of the rights set out in the warning. Appellant does not assert that he was not warned of his rights. The warning card implemented by the San Antonio Police Department included all of the rights found in *Miranda* and Article 38.22. *Miranda*, 384 U.S. at 444; CODE CRIM. PROC. ANN. art. 38.22, § 2. And, by signing the card, he acknowledged having received the requisite warning from Detective Walsh. Rather, Appellant argues that though he "clearly understood his rights," he "did not explicitly waive them."

## III.   Appellant's waiver

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda*, 384 U.S. at 444, 475; *Hill v. State*, 429 S.W.2d 481, 486 (Tex. Crim. App. 1968). The State must prove waiver by a

preponderance of the evidence.[4] *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Appellant argues that he did not "provid[e] a written waiver" or "articulate any kind of

waiver of his rights." But Appellant's objection to the absence of a written or articulated

waiver runs contrary to "the general rule . . . that neither a written nor an oral express

waiver is required." *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988).

True, "a valid waiver will not be presumed simply from the silence of the accused after

warnings are given or simply from the fact that a confession was in fact eventually

obtained." *Miranda*, 384 U.S. at 475. But a waiver need not assume a particular form

and, in some cases, a "waiver can be clearly inferred from the actions and words of the

person interrogated."[5] *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

The question is not whether Appellant "explicitly" waived his *Miranda* rights, but

---

[4]"Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Connelly*, 479 U.S. at 168.

[5]Appellant cites to *Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1996), to support his argument, and asks us to clarify *Garcia* and announce "that there must be an affirmative acknowledgment of the waiver of the rights set out in Article 38.22." First, to accept Appellant's proposal that we require an "affirmative acknowledgment" of waiver would run counter to the established rule that waiver can be inferred and need not be express. Second, the facts of *Garcia* concern a written statement and a written waiver, and therefore that case is not particularly instructive here.

In contrast, in a case factually similar to Appellant's, *Barefield v. State*, 784 S.W.2d 38, 40 (Tex. Crim. App. 1989), the defendant presented essentially the same request to this Court as Appellant does now: that we construe Article 38.22 Section 3 to require that electronically recorded confessions contain an express waiver of rights. We analyzed videotaped statements in which a defendant "was not specifically asked, nor did he specifically volunteer, that he waived [his] rights." *Id.* We declined the defendant's suggested statutory interpretation and concluded that the trial court properly found that the defendant had knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Id.* at 40-41.

whether he did so knowingly, intelligently, and voluntarily.[6]  *Id.*  To evaluate whether Appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights we turn to the standard outlined in *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).  The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct.  *Fare*, 442 U.S. at 725; *see also Butler*, 441 U.S. at 375-76.  We agree with the court of appeals that the totality of the circumstances indicates that Appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights.[7]

---

[6]Presiding Judge Keller's concurring opinion refashions Appellant's ground for review, stating, the "primary claim is that he did not waive his rights at all, rather than that his waiver was involuntary."  However, Appellant's petition for discretionary review and brief to this Court state his sole ground for review as, "[Appellant] did not make a knowing, intelligent[,] and voluntary waiver of his rights."

[7]One point not raised by Appellant concerns the requisite timing of a defendant's waiver. The trial court found compliance with Article 38.22, stating in its conclusions of law: "This Court finds that the defendant, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights as set out above."  But what exactly constituted Appellant's waiver?  The court of appeals identified the waiver in this way: "the fact that [Appellant] acknowledged his rights in writing, combined with the fact that [he] voluntarily continued the interview after being advised of those rights, is strong evidence that he knowingly, voluntarily, and intelligently waived the protections afforded to him."  *Joseph*, 2008 Tex. App.

## A.     Voluntariness

The totality of the circumstances surrounding the interrogation shows Appellant's

waiver was voluntary.  That is, the waiver resulted from a free and deliberate choice

without intimidation, coercion, or deception.  Immediately after being warned by

---

LEXIS 5133 at *23.  Does the timing of those actions comply with statutory and Supreme Court guidelines for waiver?

The Code of Criminal Procedure requires waiver prior to the start of the statement.  CODE CRIM. PROC. ANN. art. 38.22.  Article 38.22 Section 2 requires that for a written statement to be admissible, the accused must waive his rights "prior to and during the making of the statement."  CODE CRIM. PROC. ANN. art. 38.22, § 2.  Section 3 addresses oral and sign language statements and requires that "prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning."  CODE CRIM. PROC. ANN. art. 38.22, § 3.

*Butler* allows waiver to be "inferred from the actions and words of the person interrogated." *Butler*, 441 U.S. at 373.  In that case, the warning card given to the defendant included a statement of waiver at the bottom. *Id.* at 371.  The defendant refused to sign the waiver but agreed to speak to the FBI agents who had arrested him. *Id.*  The North Carolina Supreme Court held that under *Miranda* "no statement of a person under custodial interrogation may be admitted in evidence against him unless, at the time the statement was made, he explicitly waived the right to the presence of a lawyer." *Id.* at 370.  The U.S. Supreme Court disagreed, concluding that a defendant's actions and words can indicate waiver and that an express written or oral waiver is not required. *Id.* at 373.  Thus, under *Butler*, a defendant's conduct–namely, willingly talking with investigators–can demonstrate a knowing, intelligent, and voluntary waiver of his *Miranda* rights.

Therefore the question becomes, how do you reconcile the Code's requirement that a defendant show waiver *before* giving a statement when *Butler* and this Court's adoption of *Butler* (*see Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Watson*, 762 S.W.2d at 601) allow a defendant to show waiver *by* giving a statement?  Admittedly, the facts of *Butler* require less interpretation than Appellant's case; the implicit waiver in *Butler* ("I will talk to you . . . .") was neatly separate from the defendant's inculpatory statements. *Butler*, 441 U.S. at 371.  Nevertheless, Appellant's actions, though less distinct, do show a "course of conduct indicating waiver." *Id.* at 373.  The quandary concerns the timing: the waiver identified by the court of appeals occurred contemporaneous with and not prior to Appellant's statement.

Perhaps the answer lies in the method by which waiver is to be analyzed.  A court must evaluate the totality of the circumstances and this "approach permits–indeed, it mandates–inquiry into all the circumstances surrounding the interrogation." *Fare*, 442 U.S. at 725.  Thus, in a case where there is no express waiver, we search not for a specific moment, but for a collective body of facts representing the interrogation as a whole.

Detective Walsh that he had the right to remain silent and that he did not have to make any statement to anyone, Appellant willingly participated in a six-hour interview. At no time during the statement did Appellant request an attorney and at no time did he ask that the interview be stopped. In fact, during portions of the interview, Appellant seemed eager to share information with the detectives. For example, when discussing Vivian's description of Bolillo, one of the detectives stood up to leave the interrogation room and Appellant urged that the detective stay to listen to his explanation. Furthermore, the record shows no evidence of intimidation or coercion. Detective Walsh testified that he did not coerce Appellant in any way into giving information. The lack of intimidation and coercion can be seen during the interview when Appellant felt comfortable responding to specific questions with "no comment." Upon hearing this response, the detectives did not resort to "physical or psychological pressure to elicit [further] statements." *Moran*, 475 U.S. at 421. Moreover, the fact that Appellant felt free to decline answering particular questions suggests that the information he did choose to provide was given voluntarily. Finally, there appears to be no possibility that a promise from police could have jeopardized the voluntariness of Appellant's statement. Detective Walsh testified that at no time did members of the police department promise Appellant anything in exchange for giving a statement.[8]

---

[8]"A promise made by a law enforcement officer may render a confession involuntary if it was positive, made or sanctioned by someone with apparent authority, was of some benefit to the defendant and was of such a character as would likely cause a person to speak untruthfully." *Garcia*, 919 S.W.2d at 388.

**B.      Awareness**

The totality of the circumstances surrounding the interrogation shows Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them.  At the start of the interview, Detective Walsh asked if Appellant spoke and read English; to both inquiries Appellant replied, "Yes, sir."  Then Walsh read the warning card aloud, which repeatedly informed Appellant that he did not have to say anything.  The warnings read to Appellant made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights.  *Miranda*, 384 U.S. at 444; CODE CRIM. PROC. ANN. art. 38.22, § 2.  When asked if he understood his rights, Appellant replied, "Yes, sir," and signed his name in the margin of the warning card.  That Appellant replied "no comment" to certain questions not only relates to our inquiry into the voluntariness of the statement but also shows his awareness of his rights.  His conduct during those portions of the interview demonstrated that he had the requisite level of comprehension to waive his *Miranda* rights.

**IV.     Conclusion**

The totality of the circumstances shows that Appellant did knowingly, intelligently, and voluntarily waive his rights under Article 38.22 and *Miranda*.  The court of appeals did not err in affirming the trial court's denial of Appellant's motion to suppress.  Appellant was adequately advised of his rights and, as he stated to this Court,

he "clearly understood his rights." Immediately after being told that he had the right to remain silent, that he did not have to make any statement to anyone, and that any statement he made would be used against him, he willingly participated in a six-hour interview with police. Not once did he ask that the interview be stopped, nor did he request an attorney. We affirm the judgment of the court of appeals.

Meyers, J.

Delivered: February 24, 2010

Publish