

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00187-CR

Fernando **RODRIGUEZ**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2011-CRN-531-D3
Honorable Beckie Palomo, Judge Presiding[1]

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  September 10, 2014

AFFIRMED

Fernando Rodriguez Jr. was convicted by a jury of murder and sentenced to seventy years imprisonment.  On appeal, Rodriguez contends the trial court erred in admitting hearsay testimony and denying his motion to suppress.  Rodriguez also challenges the sufficiency of the evidence to support his conviction.  We affirm the trial court's judgment.

---

[1] The Honorable Elma Teresa Salinas Ender presided over the hearing on the motion to suppress.  The Honorable Beckie Palomo presided over the jury trial and signed the judgment.

**HEARSAY TESTIMONY**

In his first issue, Rodriguez contends the trial court erred in admitting the testimony of one of his co-defendants regarding statements Rodriguez made to him while in jail. Rodriguez asserts the statements are hearsay and not admissible under the co-conspirator exception to the hearsay rule. The State responds that the statements were admissible under the admissions by a party opponent exception to the hearsay rule, which is the exception urged by the prosecutor during trial. The State further responds that the statements were cumulative of other testimony admitted without objection.

When a trial court overrules a hearsay objection and admits the evidence in question, the trial court's ruling is reviewed under an abuse of discretion standard. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). Under Rule 802 of the Texas Rules of Evidence, hearsay generally is not admissible. TEX. R. EVID. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id*. at 801(d). Rule 801(e)(2), however, entitled "admission by party-opponent" contains a list of statements that may be offered against a party that are not considered hearsay. *Id*. at 801(e)(2).

In this case, the State offered the testimony of one of Rodriguez's co-defendants regarding statements Rodriguez made to him while in jail. Rodriguez contends that such testimony would be admissible under Rule 801(e)(2)(E) only if the statement was made during the course of and in furtherance of the conspiracy. *See id*. at 801(e)(2)(E). Because the conspiracy had already ended at the time Rodriguez was arrested and in jail awaiting trial, Rodriguez asserts the testimony of his co-defendant was inadmissible, and the trial court abused its discretion in admitting the evidence. In his brief, however, Rodriguez does not address Rule 801(e)(2)(A), which was the rule cited by the prosecutor at trial in urging the trial court to overrule defense counsel's objection.

Under Rule 801(e)(2)(A), a party's own statement which is being offered against him in evidence is not hearsay. *See id*. at 801(e)(2)(A). In this case, the statements about which Rodriguez complains are his own statements. Because the co-defendant's testimony regarding Rodriguez's own statements was admissible under Rule 801(e)(2)(A), Rodriguez's first issue is overruled. *See McDuffie v. State*, 854 S.W.2d 195, 209 (Tex. App.—Beaumont 1993, pet. ref'd) (holding co-conspirator's testimony regarding appellant's out-of-court statements was admissible under Rule 801(e)(2)(A) "as a statement offered against appellant which was appellant's own statement").

## MOTION TO SUPPRESS

In his second issue, Rodriguez contends the trial court erred in denying his motion to suppress his oral statement recorded on DVD because he did not waive his *Miranda* rights on the recording. The State responds that Rodriguez signed a written waiver of the rights after the rights were read to him during the recording and also that a waiver can be implied from the totality of the circumstances.

Article 38.22 of the Texas Code of Criminal Procedure provides that no oral statement of an accused made as a result of custodial interrogation is admissible as evidence against the accused in a criminal proceeding unless: (1) the statement was recorded; and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West Supp. 2013). In this case, Rodriguez does not dispute that he was warned of his rights and that he understood his rights. Rodriguez's only complaint is that he did not waive his rights during the recording.

The State has the burden of showing Rodriguez waived his rights by a preponderance of the evidence. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010); *Hernandez v. State*, 387 S.W.3d 881, 885 (Tex. App.—San Antonio 2012, no pet.). Neither a written nor an oral express

waiver is required. *Joseph*, 309 S.W.3d at 24; *Hernandez*, 387 S.W.3d at 885. A waiver need not be in any particular form and can be inferred from the actions and words of the person interrogated. *Joseph*, 309 S.W.3d at 24. "'As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.'" *Hernandez*, 387 S.W.3d at 885 (quoting *Berghius v. Thompkins*, 130 S.Ct. 2250, 2262 (2010)). In determining whether Rodriguez validly waived his rights, we consider the totality of the circumstances, including Rodriguez's background, experience, and conduct. *Id.*

In this case, Rodriguez voluntarily arrived at the police station after midnight and asked to speak to a detective. Two detectives entered the interview room, and the lead detective immediately read Rodriguez his rights from a printed form. Rodriguez verbally stated that he understood his rights and then was provided the printed form on which he initialed each of the rights in the space provided. On the printed form, the following language appears immediately after the printed rights that Rodriguez initialed and above Rodriguez's signature: "*** You are making this statement knowingly, intelligently, and are voluntarily waiving your rights ***". After Rodriguez initialed and signed the form, he began sharing his version of the events and responding to the detectives' questions. Given Rodriguez's signature of the written waiver and his voluntary participation in the interview, the record supports the trial court's finding that Rodriguez waived his rights in accordance with Article 38.22.

## SUFFICIENCY

The jury charge instructed the jury that a person commits the offense of murder "if the person attempts to commit a felony, specifically, Aggravated Kidnapping, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he intentionally or knowingly commits or attempts to commit an act clearly dangerous to

human life that causes the death of an individual." The jury was further instructed that a person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. *See* TEX. PENAL CODE ANN. § 20.04(b) (West 2011).

In his final issue, Rodriguez challenges the sufficiency of the evidence to support the jury's finding that he had the intent to engage in aggravated kidnapping.[2] In evaluating the legal sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (emphasis in original).

Based on Rodriguez's oral statement, Rodriguez was driving a black Ford Explorer, with Jose Angel Diaz, and Martin Piñones as passengers. They were looking for some people who had stolen marijuana from them. While at an apartment complex they had under observation, a vehicle arrived driven by Jose Gonzalez, who Rodriguez described as "the individual that they [were] looking for." Diaz and Piñones approached the vehicle and extracted Gonzalez from his vehicle with the intention of putting him in their vehicle. Diaz and Piñones struggled with Gonzalez who

---

[2] Although Rodriguez challenges both the legal and factual sufficiency of the evidence, the Texas Court of Criminal Appeals has clarified that the only standard a reviewing court applies in determining the sufficiency of the evidence is the legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

was pleading with Piñones "that he didn't have the dope," and Piñones shot him during the struggle.

Another co-defendant in the case, Francisco Alan Martinez Camara, testified that he rode with Rodriguez a few days earlier to the apartment complex where the shooting occurred because Rodriguez was looking for someone who had stolen from them. Camara later encountered Rodriguez in jail and asked Rodriguez what had occurred. Rodriguez told him that they had returned to the apartment complex with the intent of kidnapping the person they were looking for because of some things that he had stolen. Rodriguez then told him that they saw "the one that they were looking for" arrive as they were leaving. Rodriguez stated that they put the other man into their vehicle, but he was able to run away. Rodriguez "pushed" the man with his vehicle, and they shot him when he got up running.

A resident of the apartment complex, Blanca Banda, testified that Rodriguez[3] and another man who had been in a black Ford Explorer approached a car that had pulled into the parking lot. Rodriguez and the other man began hitting the windows and screaming for the driver to get out. Banda stated that both men had weapons. Banda went inside her apartment but saw through her window that "they were taking him." Banda heard doors and the black Ford Explorer left. Banda testified that they forced the driver of the other car into the black Ford Explorer.

Alberto Sanchez, Jr. lived in a house in front of the apartment complex. When he was arriving home, he saw men pointing guns at another man to get him inside a black Ford Explorer parked at the apartment complex. The other man was scared and backing away. The man said he did not know the other men and was not going to get inside the vehicle. The other men were able to get the man inside the vehicle, but he got back out and ran back towards the apartment complex.

---

[3] Banda identified Rodriguez from a tattoo on his neck.

The Ford Explorer ran into him but he got back up and continued to run. One of the other men then shot him.

The foregoing evidence is legally sufficient to support the jury's finding that Rodriguez intended to engage in aggravated kidnapping.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH