PD-1192-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/15/2015 3:53:29 PM
Accepted 9/16/2015 1:00:14 PM
ABEL ACOSTA
CLERK

NO._____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

---

NO. 14-14-00165-CR
IN THE COURT OF APPEALS FOR THE
FOURTEENTH DISTRICT OF TEXAS
AT HOUSTON

---

TRIAL COURT NO. 1362106
IN THE 208TH DISTRICT COURT
OF HARRIS COUNTY, TEXAS

---

HAROLD BROWN,
*Appellant*

VS.

THE STATE OF TEXAS,
*Appellee*

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

September 16, 2015

ABEL ACOSTA, CLERK

Nicole DeBorde
BIRES SCHAFFER AND DEBORDE
SBOT 00787344
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500 – telephone
(713) 228-0034 – facsimile
Nicole@BSDLawFirm.com

Attorney for Appellant,
Harold Brown

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. PROC. 68.4(c), appellant requests oral argument.

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................1

INDEX OF AUTHORITIES.......................................................................................2

STATEMENT REGARDING ORAL ARGUMENT ................................................1

STATEMENT OF THE CASE...................................................................................4

STATEMENT OF PROCEDURAL HISTORY........................................................5

GROUND FOR REVIEW NUMBER ONE............................................................6

**Did the Fourteenth Court of Appeals decide an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals in holding the trial court did not abuse its discretion by admitting Appellant's recorded statement to police?**

ARGUMENT ..............................................................................................................6

PRAYER FOR RELIEF .............................................................................................8

CERTIFICATE OF COMPLIANCE.........................................................................9

CERTIFICATE OF SERVICE ................................................................................10

APPENDIX.............................................................................................................. A-1

# INDEX OF AUTHORITIES

**CASES**                                                      **PAGE**

*Barefield v. State*, 784 S.W.2d 38, 40 (Tex. Crim. App. 1989)..........................6, 7

*Brown v. State*, 14-14-00165-CR, 2015 WL 4930860, at *7 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet. h.)....................................................................5

*Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010).............................6, 7

*North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)..............................................................................................................6, 7

**STATUTES AND RULES**

Tex. R. App. P. 66.3.............................................................................................6, 7

Tex. R. App. P. 68.4..............................................................................................3

Tex. Code Crim. Proc. 38.22................................................................................6, 7

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 68.4(a), a complete list of the names and all interested parties is provided below.

Appellant:                              Harold Brown
                                        TDCJ# 01916995
                                        Allred Unit
                                        2101 FM 369 N
                                        Iowa Park, TX 76367

Presiding Judge:                        Hon. Wayne Mallia
                                        208th District Court
                                        1201 Franklin, 17th Floor
                                        Houston, Texas 77002

Trial Prosecutors:                      Lisa Calligan
                                        Paul Fortenberry
                                        Assistant District Attorneys
                                        1201 Franklin
                                        Houston, Texas 77002

Defense Counsel at Trial:               Allen Isbell
                                        Attorney at Law
                                        202 Travis, Suite 208
                                        Houston, Texas 77002

State's Counsel on Appeal:              Hon. Devon Anderson
                                        Harris County District Attorney
                                        1201 Franklin, Suite 600
                                        Houston, Texas 77002

Defense Counsel on Appeal:              Nicole DeBorde
                                        Attorney at Law
                                        Bires Schaffer & DeBorde
                                        712 Main Street, Suite 2400
                                        Houston, Texas 77002

3

TO THE COURT OF CRIMINAL APPEALS:

## STATEMENT OF THE CASE

On the night of September 2, Club ICU at Mesa and Tidwell hosted two birthday parties for two separate groups at the same time. (3 R.R. 99, 4 R.R. 106, 172). One of the parties was for the Wheatley family and the other one was for Gilbert and Yvette Kibble. (4 R.R 106, 172). Late in the evening, near closing time, a woman from the Kibble party and a woman from the Wheatley party got into a shoving match and a verbal altercation on the dance floor of the club. (3 R.R. 101; 4 R.R. 45, 116, 175). The owner flipped on the lights and Gilbert Kibble III, one of the birthday honorees, stopped the DJ. (4 R.R. 175). The parties began to clean up and leave separately.

Appellant made a statement to the police days after the incident. Police recorded the statement on a tape recorder but it was not videotaped. On the audio-only recording, the officers can be heard giving Appellant his statutorily required *Miranda* warnings, but Appellant never expressly waives those rights. In the recorded statement, Appellant said someone came at him during the fighting and shot a gun in the air. (5 R.R. 51). He said he tussled with the person and got the gun away and then shot two people who were attacking him. (5 R.R. 51-52).

**STATEMENT OF PROCEDURAL HISTORY**

Appellant was charged with the felony offense of capital murder. (C.R. 21). In particular, he was charged with unlawfully, during the same criminal transaction, intentionally and knowingly causing the death of Gilbert Kibble III, by shooting him with a deadly weapon, namely a firearm, and intentionally knowingly causing the death of Curtis Steward III, by shooting him with a deadly weapon, namely a firearm, on or about September 2, 2012. (C.R. 21). Appellant pleaded not guilty and proceeded to trial before a jury. (3 R.R. 11). The jury found Appellant guilty of capital murder as charged in the indictment. (C.R. 345). The trial court assessed punishment at life imprisonment in the Texas Department of Criminal Justice — Correctional Institutions Division without the possibility of parole, as mandated by section 12.31 of the Texas Penal Code. (C.R. 348). Appellant timely filed notice of appeal.

The Fourteenth Court of Appeals affirmed the trial court's judgment. *Brown v. State*, 14-14-00165-CR, 2015 WL 4930860, at *7 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet. h.) No motion for rehearing was filed. Appellant now timely petitions this Honorable Court for discretionary review. Appellant presents one (1) ground for review.

5

APPELLANT'S FIRST GROUND FOR REVIEW

**Did the Fourteenth Court of Appeals decide an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals in holding the trial court did not abuse its discretion by admitting Appellant's recorded statement to police?**

ARGUMENT

The Fourteenth Court of Appeals erroneously held the trial court did not err in admitting Appellant's recorded statement to police such that review is warranted pursuant to Texas Rule of Appellate Procedure 66.3(b). Appellant complained on appeal in his Second Point of Error that the trial court erred by admitting Appellant's recorded statement to police when it contained no express *Miranda* rights waiver as required by article 38.22 of the Texas Code of Criminal Procedure.

Article 38.22 requires: 1) a recorded statement, and 2) a knowing, intelligent, and voluntary waiver of the privilege against self-incrimination. TEX. CODE CRIM. PROC. art. 38.22, § 3 (Vernon 2007).

This Court has explained that "a waiver need not assume a particular form, and in some cases, a 'waiver can be clearly inferred from the actions and words of the person interrogated.' " *See Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) (citing *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)); *accord Barefield v. State*, 784 S.W.2d 38, 40 (Tex. Crim. App. 1989). In both *Joseph* and *Barefield*, the Court analyzed videotaped

6

statements, as opposed to an audio-only recording as found in this case. The videotaped statements found in *Joseph* and *Barefield* allowed access to certain behavior and body language not available to the Court of Appeals in this case.

It was error for the Court of Appeals to consider the audio-only recording to establish Appellant's knowing, intelligent, and voluntary waiver of the privilege against self-incrimination. This Court has yet to address whether the State may establish a knowing, intelligent, and voluntary waiver of the privilege against self-incrimination in cases with audio-only recordings. Article 38.22 was intended to augment the minimum federal standards set by the U.S. Constitution. Allowing courts to rely on the holding in *North Carolina v. Butler*, *supra*, and extending the holding to audio-only recordings, as the Court of Appeals has done in this case, eviscerates the expanded statutory protections of article 38.22 as afforded by the Texas legislature.

In holding the trial court did not err in admitting Appellant's statement to police by considering the audio-only recording to establish Appellant's knowing, intelligent, and voluntary waiver of the privilege against self-incrimination the First Court of Appeals decided an important question of state law that has not been, but should be, decided by this Court. Accordingly, review is warranted pursuant to Tex. R. App. P. 66.3(b).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Honorable Court grant this Petition for Discretionary Review. Following the grant of review, Appellant prays that the judgment of the Court of Appeals be reversed and rendered, or reversed and a new trial ordered, or the case remanded for further review.

Respectfully submitted,

/s/ Nicole DeBorde
Nicole DeBorde
BIRES SCHAFFER AND DEBORDE
Texar Bar No. 00787344
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500 – Telephone
(713) 228-0034 – Facsimile
Email: Nicole@BSDLawFirm.com

Attorney for Appellant,
Harold Brown

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules Appellate Procedure, the undersigned counsel of record certifies that the Petition for Discretionary Review contains 1,477 words.

/s/ Nicole DeBorde
Nicole DeBorde

CERTIFICATE OF SERVICE

I hereby certify that a true copy of Appellant's petition for discretionary review has been either personally served upon or mailed by U.S. Postal Service certified mail, return receipt requested, on September 15, 2015, to the following persons:

Devon Anderson
District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002

State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

Respectfully submitted,


*/s/ Nicole DeBorde*
Nicole DeBorde

**A P P E N D I X**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-14-00165-CR

**HAROLD  BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1362106**

## M E M O R A N D U M   O P I N I O N

Following a jury trial, appellant Harold Brown was found guilty of capital murder. The trial court sentenced appellant to life in prison without parole. In three issues, appellant contends that the trial court erred by (1) permitting an in-court identification of appellant because police used a suggestive out-of-court procedure; (2) admitting appellant's statement to the police because he did not expressly waive his rights on the audio recording; and (3) including a voluntary intoxication

instruction in the charge because no evidence suggested appellant was intoxicated. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2012, Club ICU at 9500 Mesa Drive hosted two birthday parties. One of the parties was for the complainant, Gilbert Kibble, and his sister Yvette Kibble (the Kibble party) and the other party was for Serena Wheatley (the Wheatley party). Shortly before the club closed, a woman from the Kibble party and a woman from the Wheatley party were involved in a verbal altercation on the dance floor. After the altercation, the club owner turned on the lights and Gilbert told the DJ to stop playing music because they were going to leave. Both parties exited the club and everyone began fighting with each other in the parking lot. A person started shooting a handgun during the fight, killing Gilbert, Felipe Castro, and Curtis Steward and wounding several others. Multiple people saw the shooter and described him as a tall male with light-complected skin, cornrows, and wearing a white t-shirt and jeans. One witness testified that she heard people yelling "Scooby don't do it." Several witnesses testified that appellant's nickname is Scooby. Appellant also matched the physical description given by people at the scene.

On September 27, 2012, police officers arrested appellant and conducted an interview. Appellant stated that when he exited the club, he saw multiple people jumping on an old man. Appellant explained that he attempted to help by telling them to stop but a man pulled out a gun. Appellant stated that he and the man struggled over the gun and that he ended up with the gun and shot him. He stated that he also shot another man who was running toward him.

Appellant was indicted for capital murder on December 14, 2012. *See* Tex. Penal Code § 19.03(a)(7). Appellant pleaded not guilty. The jury found appellant

2

guilty as charged in the indictment. The trial court sentenced appellant to life in prison without parole.

## ISSUES AND ANALYSIS

In three issues, appellant contends that the trial court erred by (1) allowing an in-court identification of appellant because the police used a suggestive out-of-court procedure when showing the witness a photo array; (2) admitting appellant's statement to the police because he did not expressly waive his *Miranda* rights on the audio recording of the interview; and (3) including a voluntary intoxication instruction in the jury charge because no evidence suggested appellant was intoxicated on the night of the shooting.

## I.     In-Court Identification

In his first issue, appellant asserts that the trial court erred by admitting an in-court identification of appellant because a witness's identification of appellant was based on an impermissible, out-of-court procedure. Appellant contends that the identification was inadmissible because the witness stated that police told him that the shooter was in the photo spread and that he was required to pick someone from the photo spread.

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Barley v. State*, 906 S.W.2d 27, 32−33 (Tex. Crim. App. 1995). To challenge the admissibility of a pretrial identification, an appellant has the burden to show, by clear and convincing evidence and based on the totality of circumstances, that (1) the pretrial identification procedure was impermissibly suggestive; and (2) it created a very substantial likelihood of irreparable misidentification. *Id*. at 33 (citing *Simmons v. United States*, 390 U.S. 377, 384

3

(1968)).

Under the first *Barley* prong, we examine the manner in which the pretrial procedure was conducted, as well as the content of the line-up or photo spread. *See Burns v. State*, 923 S.W.2d 233, 237−38 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Suggestiveness may arise from the manner in which a pretrial identification procedure was conducted. *Barley*, 906 S.W.2d at 33. For example, a police officer may point out the suspect or suggest that a suspect is included in a line-up or photo array. *Id*. In addition, the content of a line-up or photo array itself may be suggestive if the suspect is the only individual who closely resembles the witness's description. *Id*. A pretrial identification may be suggestive in a single procedure or by the cumulative effect of multiple procedures. *Id*.

If it is determined that the pretrial identification procedure was impermissibly suggestive, we then determine whether the procedure created a "very substantial likelihood of irreparable misidentification." *Id*. at 34. Under the second *Barley* prong, we weigh the following five nonexclusive factors against the corrupting effect of a suggestive identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008).

We review de novo whether an identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, but we review historical issues of fact in the light most favorable to the trial court's ruling. *Loserth v. State*, 963 S.W.2d 770, 773−74 (Tex. Crim. App. 1998).

4

Here, appellant does not complain about the content of the photo spread; he challenges only the process used by the police in conducting the photo spread. Appellant argues that Allen Brown's[1] in-court identification of appellant was impermissibly suggestive because the police told him that the suspect was in the photo spread and that he was required to choose someone.

Allen testified at trial that he attended the Wheatley Party at Club ICU on the night of the shooting. He stated that he left the club around 2:00 a.m. to put food in his car when several men jumped on him and started fighting. Allen stated that he was fighting with Curtis, heard gunshots, and then saw that Curtis had been shot. Allen saw the shooter run by him, carrying a gun. Allen described the shooter as being around six-feet tall with cornrows. The police showed Allen a photo spread approximately two weeks after the shooting and Allen selected two photos but eventually selected appellant's photo from the number one position and told the police that he was the shooter. When the prosecutor asked him why he initially selected two photographs, Allen stated the following:

> Because I told him that I was blurred and I told him I didn't know who it was. And he was like: You know it ain't him. I said: Well, they said it was him. So, I'm like, I want to be sure, you know, I want to make sure --

The prosecutor immediately asked to approach the bench and informed the judge that she believed that Allen was about to perjure himself and that they should get him an attorney. The trial court then conducted a hearing outside the presence of the jury on the admissibility of Allen's in-court identification.

At the hearing, Allen stated that he did not want to be involved in the case and that he did not want to testify at trial. Allen testified that although he selected

---

[1] Allen Brown is not related to appellant.

5

two photographs, he told the police "off the record" that the person in the number one position was the shooter. Allen also stated that the police gave him a piece of paper with his warnings, which included the instruction that he was not required to pick anyone from the photo spread. Allen stated that the police did not read him the warnings and that although he signed them, he did not read them. Allen then clarified that the police did not tell him that he had to pick someone, rather, the police told him to pick one of the two photographs he circled. Allen stated that the police told him the individual was in the photo spread, but that they did not tell him which photograph to select. Allen then identified appellant in the courtroom as the shooter.

On cross-examination, Allen stated "[n]o, they weren't telling me to pick out Mr. Brown. I picked out Mr. Brown because that's who it was." At the conclusion of the hearing, defense counsel objected to Allen's in-court identification, arguing that it was tainted by the improper police identification procedures. The trial court overruled the objection. Trial resumed and Allen identified appellant as the shooter. Allen stated that he selected appellant's photograph from the photo spread because he was the person who ran by him with a gun on the night of the shooting.

Officer JC Padilla testified about the procedure used to show Allen the photo spread. Officer Padilla stated that in order to keep the process fair and objective, a blind administrator showed Allen the photo spread. Officer Padilla explained that a blind administrator is a detective who is not involved in the case and administers the photo spread but does not know which position the suspect is located and does not know what the suspect looks like. When asked about Allen's identification, Officer Padilla stated that a blind administrator showed him the photo spread and that it would have been impossible for him to suggest who to pick because he did not know who the suspect was or which position he was located. After Allen

6

selected two photographs from the spread, Officer Padilla met with Allen. Officer Padilla recalled that Allen told him "off the record" the shooter was in the number one position, which contained appellant's photograph. Officer Padilla stated that he believed that Allen did not want to be involved in the investigation and that he wanted to distance himself as much as possible. Officer Padilla also stated that he never told Allen who to pick from the photo spread.

Appellant complains that the photo spread was impermissibly suggestive because Allen claimed that the police told him the suspect was in the photo spread. However, "[a] lineup is not rendered unnecessarily suggestive simply because the complainant is told that it contains a suspect, because a complainant would normally assume that to be the case." *Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992). Further, Officer Padilla testified that a blind administrator would not have known the suspect's identity or where he was in the spread and that he never told Allen who to pick. The trial court was free to believe Officer Padilla's testimony. *See Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

Appellant also argues that the photo spread was impermissibly suggestive because the police told Allen that he was required to pick someone. During the hearing, Allen admitted that he had previously told the prosecutor that the police followed proper procedures and that he was given a sheet with instructions. Allen also signed the witness admonishment sheet, which states the following: "You are not required to select any individual and that it is equally important to clear persons not involved in the crime from suspicion as it is to identify persons believed to be responsible for the crime." When testifying before the jury, Allen stated that the officer did not tell him he was required to pick someone from the photo spread.

We conclude that the procedure was not impermissibly suggestive. Although Allen gave conflicting statements at trial, he testified that the officers did not tell him who to pick and that they did not tell him he was required to pick someone. Allen identified appellant as the shooter based on his independent recollection of the shooting. Thus, appellant did not meet his threshold burden to present clear and convincing evidence of a totality of the circumstances showing that the pretrial photo spread was impermissible suggestive. *See Barley*, 906 S.W.2d 34−35. Accordingly, we need not address whether the procedure used to identify appellant presented a likelihood of misidentification. *See id.* at 33.

We overrule appellant's first issue.

## II.    Admissibility of Appellant's Statement to Police

In his second issue, appellant contends that the trial court erred by admitting his recorded statement to the police because the record did not contain an express waiver of appellant's *Miranda* rights as required by Article 38.22 of the Texas Code of Criminal Procedure.

We review the trial court's admission of evidence for an abuse of discretion. *Nickerson v. State*, 312 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). While a trial court has substantial discretion, it abuses its discretion if its ruling is outside of that zone within which reasonable persons might disagree. *Id*. A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling. *Id*.

Article 38.22 of the Texas Code of Criminal Procedure establishes the procedural safeguards for securing the privilege against self-incrimination. Tex. Code Crim. Proc. art. 38.22; *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). No oral statement of an accused made as a result of custodial interrogation

is admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. Tex. Code Crim. Proc. art. 38.22, § 3; *Joseph*, 309 S.W.3d at 23−24. Subsection 2 requires that the defendant be informed of the following rights:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. art. 38.22, § 2(a). The State bears the burden of establishing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph*, 309 S.W.3d at 24.

Generally, a defendant's confession is inadmissible without a valid waiver. *See* Tex. Code Crim. Proc. art. 38.22, § 3(a). However, neither a written nor oral express waiver is required. *Joseph*, 309 S.W.3d at 24. Rather, a waiver may simply be inferred from the actions and words of the person interrogated. *Id*. at 24−25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Nonetheless, the waiver must still be knowingly, intelligently, and voluntarily made. In evaluating whether appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we employ a two-prong test, asking: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and

9

deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it. *Id*. at 25 (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id*. We may consider the defendant's background, experience, and conduct in our review of the totality of the circumstances. *Id*.

The totality of the circumstances surrounding the interrogation shows that appellant's waiver was voluntary and resulted from a free and deliberate choice without intimidation, coercion, or deception. Officer Padilla testified that when he interviewed appellant, he read him his *Miranda* rights and built up a rapport. Officer Padilla stated that he again read appellant his *Miranda* rights when they started recording the interview. The recording reflects that after Officer Padilla read aloud each right, he asked appellant if he understood the right. Appellant verbally indicated that he understood each right by responding with "yes sir." After receiving the warnings and indicating that he understood each right, appellant participated in an interview which lasted approximately eleven minutes. Appellant did not ask for an attorney nor did he ask to terminate the interview. The recording reflects that appellant acknowledged that the police were respectful and that he was treated fairly. Appellant was offered food and water and was free to use the restroom. The recording shows no evidence of intimidation or coercion or that appellant was under duress. The parties remained calm throughout the entire interrogation process.

We also conclude that the totality of the circumstances demonstrates that appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Appellant

was given all of the required warnings mandated by Article 38.22, including that appellant was not required to say anything and could stop the interview at any time. After each right was given, appellant was asked if he understood his right. Appellant consistently answered in the affirmative, indicating his understanding of each right. Appellant freely answered all of the officers' questions. By indicating his understanding of the rights and then freely answering the questions without ever asking the interview to terminate, appellant's conduct demonstrated his awareness of his rights and his knowing waiver of those rights. *See id*. at 27.

The totality of the circumstances reflects that appellant knowingly, intelligently, and voluntarily waived his rights. Thus, appellant's recorded statement was admissible and the trial court did not abuse its discretion by admitting the statement at trial.

We overrule appellant's second issue.

### III.   Jury Instruction

In his third issue, appellant asserts that the trial court erred by including a voluntary intoxication instruction in the jury charge because there was no evidence to suggest that appellant was intoxicated and that the intoxication somehow excused his behavior.

Appellate review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731−32 (Tex. Crim. App. 1994). First, we must determine whether error occurred. *Id*. at 731. If so, we must then analyze whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Under this second step, the degree of harm necessary for reversal depends on whether the appellant properly preserved the objection. *Id*. When, as here, error in the charge is preserved for review,

11

reversal is required if the error caused "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

The first issue is whether there was error in the jury charge. *Abdnor*, 871 S.W.2d at 731. If there was no error, we need not pursue the harm analysis. The court's instruction at issue, derived from Texas Penal Code section 8.04, provides:

> Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Tex. Penal Code § 8.04(a) & (d). Jury instructions are meant to lead a jury and prevent confusion. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009). Such an instruction is appropriate if there is evidence from any source that might lead a jury to conclude that a defendant's intoxication somehow excused his actions. *Id*.; *see also Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994) (providing that defendant need not rely upon intoxication as a defense for charge to include section 8.04 instruction).

The jury heard testimony from one witness who saw appellant walking in and out of the club throughout the entire night. The witness stated that "he just looked crazy." The jury also heard from the bartender of the club who stated that appellant purchased a "set up." The bartender stated that Club ICU is a "bring your own bottle club," meaning that patrons are allowed to bring their own alcohol. The bartender explained that a set up consists of juice, ice, and cups that patrons can buy to mix with their liquor. Although the testimony of the lay witnesses does not establish unequivocally that appellant was intoxicated on the night of the shooting, the testimony is sufficient to make intoxication an issue in the case. *See Dana v. State*, 420 S.W.3d 158, 168 (Tex. App.—Beaumont 2012, pet. ref'd) (holding that voluntary intoxication instruction was proper where witness testified that defendant

12

"was on something" and that defendant had used methamphetamine in the past). Based on the testimony, the trial court could reasonably conclude that a juror might find that intoxication somehow excused appellant's actions. The trial court properly utilized the charge to prevent confusion. The inclusion of the instruction did not constitute error.

We overrule appellant's third issue.

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.


/s/ Ken Wise
   Justice


Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).